UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN GROHS,<br><br>Plaintiff,<br><br>v.<br><br>MEG YATAURO et al.,<br><br>Defendants. | Civ. No. 2:12-00905<br>(KM)(MCA)<br><br>MEMORANDUM OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the court on the motion of the Defendants, Meg Yatauro and Gary M. Lanigan, to dismiss the complaint for failure to state a claim pursuant to Fed R. Civ. P. 12(b)(6), and on grounds of sovereign and qualified immunity. Also before the Court is a motion for a preliminary injunction filed by the Plaintiff, Steven Grohs. For the reasons discussed below, the motion to dismiss is **GRANTED** in part and **DENIED** in part. The motion for a preliminary injunction is **DENIED**.

I. **BACKGROUND**

The Plaintiff, Steven Grohs, is a civilly committed resident at the Special Treatment Unit ("STU") in Avenel, Middlesex County, New Jersey. Compl., (Docket No. 10), ¶ 2.1. Grohs and four other named plaintiffs filed this civil rights action, styled as a class action, against Meg Yatauro and Gary Lanigan, officials of the New Jersey Department of Corrections ("NJDOC"). The Complaint raises a Fourteenth Amendment substantive due process claim pursuant to 42 U.S.C. § 1983 relating to the health and safety conditions of the STU where Grohs is confined. *Id.* ¶¶ 4.20, 6.7. Specifically, Grohs alleges that the STU provides residents with inadequate hot water for showering and that,

1

as a result, Grohs' medical conditions, including MRSA and a respiratory allergy, have worsened. Compl. ¶¶ 4.4 – 4.15. Grohs seeks declaratory relief regarding the Defendants' conduct; injunctive relief ordering the Defendants to repair the hot water system, appointing a Special Master, and appointing pro bono counsel; and damages. *Id.* ¶ 7.

Yatauro is the Administrator and head of the STU. *Id.* ¶ 3.2. Lanigan is the Commissioner and head of the NJDOC. *Id.* ¶ 3.3. Both Defendants are sued in their individual and official capacities. Compl. ¶¶ 3.2 – 3.3. The complaint alleges that these two Defendants are liable under the doctrine of *respondeat superior* for the conduct of their subordinates, and that they knew or should have known about the wrongful conduct that is alleged. *Id.*

Because Grohs alleges a civil rights claim for damages under 42 U.S.C. § 1983, the Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a). Diversity of citizenship is not alleged, and does not appear to be present. *See* 28 U.S.C. § 1332.

The Complaint alleges the following facts, which are assumed to be true for the purposes of this motion to dismiss. The STU consists of two buildings in Avenel, New Jersey: the Main Unit, containing individual cells, and the Annex, containing open-bay dormitories. Compl. ¶ 4.2, The NJDOC is charged with responsibility for the STU, including the maintenance and upkeep of the facility, pursuant to state law. *Id.* Grohs is housed in the Annex. *Id.*

The steam system that provides heat and hot water to the STU is in disrepair. *Id.* ¶ 4.4. The hot water provided is inadequate for the number of residents housed in the Annex. *Id.* The temperature rarely exceeds 73 degrees and is often colder. *Id.* Even when the water does exceed 73 degrees, it fluctuates to "cold and freezing cold." *Id.* The lack of hot water is worsened by other conditions at the Annex. The shower area is large and unheated. *Id.* ¶ 4.5. The steam pipes leak onto the floor of the dining area, and some parts of the pipes are not insulated. *Id.* The hot water used by the showers is

2

continuously shared with washing machines from 6:15 am to 9:15 pm, seven days a week. *Id.* The residents are not permitted to shower outside of that time range, when more hot water is available. *Id.*

On or about January 5, 2012, Grohs asked STU Assistant Administrator Steve Johnson why there was inadequate water. *Id.* ¶ 4.6. Johnson responded that he had requested that the State repair defective piping valves over the last three years, but was told that it was too expensive to repair. *Id.* The STU has also received "numerous" written complaints about the hot water. *Id.* ¶ 4.13. Residents making complaints, including Grohs, were never given any reasonable explanation why the necessary repairs were not made to the steam system. *Id.* ¶¶ 4.6, 4.13

Defendants Yatauro and Lanigan have personally toured the STU and have been informed about the residents' complaints. *Id.* ¶ 4.12. Defendants knew or should have known that residents were using alternative means of heating water, including coffee urns and microwaves. *Id.* ¶¶ 4.8, 4.9. The Defendants also knew or should have known that the building was incurring water damage from leaky steam pipes and that residents were suffering adverse health effects from this "unhealthy environment." *Id.* ¶¶ 4.7, 4.11.

Those adverse health effects include respiratory allergies and asthma. *Id.* Grohs suffers from MRSA,[1] lower back injuries, and a respiratory allergy. *Id.* ¶ 4.15. Because of MRSA, Grohs must shower at least once a day. The cold showers cause him ongoing, intermittent "non-life threatening and unnecessary respiratory difficulties." *Id.*

Grohs filed his Complaint on February 14, 2012, and applied to proceed *in forma pauperis* ("IFP"). (Docket Nos. 1, 2). The Court granted Grohs'

---

[1] The Court takes judicial notice that MRSA is an abbreviation for Methicillin-resistant Staphylococcus aureus, an infection caused by a strain of staph bacteria that has become resistant to the antibiotics commonly used to treat ordinary staph infections. In its variant forms, it seemingly tends to occur in hospitals or crowded institutional settings. *See* www.mayoclinic.org/mrsa/ (last visited Nov. 14, 2013).

3

application to proceed IFP on December 12, 2012, but denied the applications of the other four named plaintiffs. (Docket No. 9 at 3-4). In the same Order, the Court dismissed the State of New Jersey, the NJDOC, and the STU as improper defendants under Section 1983. *Id.* at 2. Although the complaint was filed as a class action, the Court deferred a ruling on class certification. *Id.* The remaining defendants, Yatauro and Lanigan, filed this motion to dismiss on May 13, 2013. (Docket No. 21).

On June 7, 2013, Grohs also filed a motion for a preliminary injunction. (Docket No. 24). In the motion, Grohs alleges that his legal papers related to this case were wrongfully taken from his cell and read, and that he has been threatened and harassed by STU corrections officers. Plaintiff P.I. Br., (Docket No. 24-1), p. 7-8, (Grohs Affs. attached as Exhibits A – B). (He acknowledges that the papers were returned to him.) *Id.* at 4. Grohs asks the Court to enjoin any further retaliation, and urges that the Court exercise supplemental jurisdiction over a common law retaliation claim. *Id.* at 10-11. Grohs has not sought leave to amend his complaint to include a retaliation claim, and at least some of the alleged targets of the claim seem to be non-parties.

The Defendants filed their opposition to the preliminary injunction motion non June 17, 2013 (Docket No. 25). Grohs filed a reply on June 25, 2013. (Docket No. 26). On August 30, 2013, he filed a supplemental pleading in further support of his motion for a preliminary injunction. (Docket 27).

## II. DISCUSSION
### A. Eleventh Amendment/"Persons" Liable Under Section 1983

The Defendants argue that the Complaint should be dismissed because Grohs' claims are barred by the Eleventh Amendment and, relatedly, that state employees in their official capacities are not "persons" amenable to suit under 42 U.S.C. § 1983. Def. Br. at 6. Defendants raise their immunity arguments under Fed. R. Civ. P. 12(b)(6), but they are more properly considered as challenges to the court's jurisdiction under Fed. R. Civ. P. 12(b)(1). Rule

4

12(b)(1) challenges may be either facial or factual attacks. *See* 2 MOORE'S FEDERAL PRACTICE § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). A court considering such a facial challenge assumes that the allegations in the complaint are true, and may dismiss the complaint only if it nevertheless appears that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *Cardio–Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa*, 67 F. Supp. 2d at 438. For the purposes of this motion to dismiss, the Defendants' immunity defenses will be considered as facial attacks.

The Eleventh Amendment "is a jurisdictional bar which deprives federal courts of subject matter jurisdiction" over actions against a State. *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n. 2 (3d Cir. 1996) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98-100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)). The state's immunity from suit also extends to "arms" of the state, such as agencies or departments. *Pennhurst*, 465 U.S. at 99; *Carter v. City of Philadelphia*, 181 F.3d 339, 347 (3d Cir. 1999) (quotations and emphasis omitted); *see also Chisolm v. McManimon*, 275 F.3d 315, 322-23 (3d Cir. 2001) ("Eleventh Amendment immunity may be available to a state party-in-interest notwithstanding a claimant's failure to formally name the state as a defendant."). The state's sovereign immunity, moreover, is preserved under Section 1983; a state is therefore not a "person" who may be sued under Section 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65-66 (1989).

The immunity of state officers under Section 1983 is more nuanced. Under *Will*, "a suit against a state official in his or her *official* capacity is not a suit against the official but rather is a suit against the official's office." *Id.* at 71 (citing *Brandon v. Holt*, 469 U.S. 464, 471, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985)). Such a suit is thus no different from a suit against the State itself. *Id.*

5

(citing *Kentucky v. Graham*, 473 U.S. 159, 165-166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018 (1978). Under *Will* and *Hafer*, Grohs' claims for damages against the Defendants in their *official* capacities are barred by sovereign immunity.

A claim for damages against a state official in his or her *individual* capacity is a different matter. In that individual capacity, he or she does not partake of the state's Eleventh Amendment sovereign immunity, and is a suable "person" within the meaning of Section 1983. *Hafer v. Melo*, 502 U.S. 21, 30-31, 112 S. Ct. 358, 116 L.Ed.2d 301 (1991) ("the Eleventh Amendment does not erect a barrier against suits to impose individual and personal liability on state officials under § 1983") (internal quotations omitted); *Smith v. New Jersey*, 908 F. Supp. 2d 560, 563 (D.N.J. 2012). An award of damages from an individual defendant, as opposed to the public treasury, is a "permissible remedy in some circumstances." *Scheuer v. Rhodes*, 416 U.S. 232, 238, 94 S. Ct. 1683 (1974). Accordingly, Grohs' claims for damages against the Defendants in their individual capacities are not barred. *See* Compl. ¶¶ 3.2 - 3.3.

That leaves Grohs' Section 1983 claim for injunctive relief. "[O]fficial-capacity actions for prospective relief are not treated as actions against the state." *Will*, 491 U.S. at 71 n.10 (quoting *Graham*, 473 U.S. at 167 n.14); *see also Ex parte Young*, 209 U.S. 123, 159-160, 28 S.Ct. 441, 52 L.Ed. 714 (1908). A state official against whom prospective injunctive relief is sought, then, does not partake of the State's sovereign immunity under the Eleventh Amendment, and is considered a "person" for purposes of Section 1983. The claim for injunctive relief is not barred.

Accordingly, I decide the Eleventh Amendment jurisdictional motions to dismiss as follows. The motion to dismiss is granted as to the Section 1983 damages claims against Yatauro and Lanigan in their official capacities. The

6

motion to dismiss is denied as to the damages claims asserted against them in their individual capacities. And the motion to dismiss is denied as to claims for injunctive or prospective relief against Defendants in their official capacities.

### B. Failure to State a Claim

The Defendants also argue that Grohs has failed to allege facts sufficient to establish a Fourteenth Amendment violation under Section 1983. These arguments will be considered under Fed. R. Civ. P. 12(b)(6), which provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted.

#### 1. The Rule 12(b)(6) standard

To state a valid claim for relief, the Complaint must contain: (1) a short and plain statement of the grounds for the court's jurisdiction; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought. Fed R. Civ. P. 8(a).

The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in favor of the Plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).

In a case brought *pro se,* such as this one, the Court must construe the complaint liberally in favor of the plaintiff. *Erikson v. Pardus,* 551 U.S. 89, 93-94 (2007); *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). Liberal construction does not, however, require the Court to credit a pro se plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). Even a pro se complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief. *See Millhouse v. Carlson,* 652 F.2d 371, 373 (3d Cir. 1981).

### 2. Personal Involvement

The Defendants first argue that the Complaint relies solely on *respondeat superior,* and fails to allege that they were personally involved in the alleged wrongdoing. Def. Br. at 10 – 11. The liability of a defendant in a Section 1983 civil rights action cannot be predicated solely on *respondeat superior*; there must be personal involvement. *See Shaw by Strain v. Stackhouse,* 920 F.2d 1135, 1147 (3d Cir. 1990); *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018 (1978); *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d. Cir. 1988) (citing *Parrat v. Taylor,* 451 U.S. 527, 537 n. 3, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Hampton v. Holmesburg Prison Officials,* 546 F.2d 1077, 1082 (3d Cir.1976)).

Defendants correctly note that one of the theories of liability alleged in the Complaint is *respondeat superior,* which is insufficient as a matter of law. *See* Compl. ¶¶ 3.2 – 3.3. If that were the only theory of liability alleged, the Complaint might have to be dismissed. The Complaint, however, *also* alleges that the Defendants were personally involved in the failure to provide hot water to the STU residents. *See id.* Specifically, the Complaint alleges the following facts: There are visibly leaking steam pipes in the STU for which trash cans are used to collect the water (Compl. ¶ 4.11); both Yatauro and Lanigan personally toured the STU (*Id.* ¶ 4.12); the STU has received numerous written complaints

8

from residents about inadequate hot water (*Id.* ¶ 4.13); Grohs asked STU Assistant Administrator Steve Johnson about the hot water in the Annex and he responded that the defective piping valves were too expensive to repair (*Id.* ¶ 4.6). Allegedly, then, both Yatauro and Lanigan had personal knowledge of the problems with hot water in the Annex, they saw the potentially unhealthy environment caused by the leaky pipes, they received complaints from residents, and, despite their official duties, took no action to repair the water system.

Construing the complaint liberally under *Haines*, I find that Grohs has alleged sufficient facts at this preliminary pleading stage to support Defendants' potential personal liability. *See Millhouse*, 652 F.2d at 373. The motion to dismiss on this ground will be denied.

### 3. Liability for conditions of civil commitment

The Defendants also argue that Grohs has failed to establish a substantive due process claim because he has not satisfied both subjective and objective components for the violation. *See* Def. Br. at 14-15. This amounts to a dispute over whether the Complaint adequately alleges that Defendants acted with "deliberate indifference" to Plaintiff's welfare. *Id.* at 15.

Grohs is not a prison inmate; he is confined pursuant to a civil order of commitment. The Complaint nevertheless alleges that Defendants have acted with "deliberate indifference" to the well-being of Plaintiff, a standard adopted from Eighth Amendment cases challenging prison conditions. *See, e.g., Farmer v. Brennan*, 511 U.S. 825 (1994); *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d. Cir. 2001) (stating elements of Eighth Amendment cruel and unusual punishment claim). In such prison cases, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the

9

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837. Thus the mental element is a subjective one: deliberate indifference. And a deprivation that is sufficiently "serious" is a denial of a "minimal civilized measure of life's necessities." *Id.* at 834 (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)). That generally implies that prison officials must provide adequate food, clothing, shelter, and medical care, and must institute reasonable safety measures. *See id.; Hudson v. Palmer,* 468 U.S. 517, 526–527 (1984). To fall short of that standard is to exceed the proper bounds of punishment.

I consider, but need not definitively decide for purposes of this motion, that the governing standard may be different for this particular kind of claim, in the particular setting of civil commitment. Certainly, it is true as a general matter that persons involuntarily committed are entitled to more considerate treatment and better conditions of confinement than are persons who are being criminally punished. *Youngberg v. Romeo,* 457 U.S. 307, 321, 102 S. Ct. 2452 (1982). *Compare Rhodes v. Chapman,* 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981) (prisoners) *with Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (pretrial detainees) *and Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro,* 595 F.Supp. 1417, 1428 (D.N.J. 1984) (pretrial detainees). Certainly the state has no *less* of a duty to provide civilly committed persons with adequate food, shelter, clothing, medical care, and safety measures. *Youngberg,* 457 U.S. at 324. And because civil commitment is not punishment, the hardships of civil confinement cannot be punitive; they must "bear some reasonable relation to the [nonpunitive] purpose for which persons are committed." *Seling v. Young,* 531 U.S. 250, 265, 121 S. Ct. 727 (2001); *see also Youngberg,* 457 U.S. at 321 (citing *Jackson v. Indiana,* 406 U.S. 715, 738, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972)).

In certain contexts, then, the case law has analyzed conditions of confinement, not under Eighth Amendment standards, but under the Due

Process clause of the Fourteenth Amendment. That analysis requires a court to weigh an individual's liberty interests against the relevant interests of the state. *Id.* Thus *Youngberg* analyzed a claim for safe conditions of confinement, freedom from bodily restraints, and training/habilitation not in terms of deliberate indifference, but rather against a standard of reasonable "professional judgment." *Id.* That "professional judgment" standard applies to "professional decisionmakers," defined as "person[s] competent, whether by education, training or experience, to make the particular decision at issue." *Youngberg*, 457 U.S. at 323 n.30 (applied to doctors and nurses in context of medical treatment within the institution). A professional decisionmaker may be held liable, not for mere negligence, but when his or her conduct "substantial[ly] depart[s] from accepted professional judgment, practice, or standards." *Youngberg*, 457 U.S. at 314 (quoting Chief Judge Seitz's concurrence in the decision below, 647 F.2d 147, 178 (1980)).

In *Shaw by Strain v. Stackhouse*, 920 F.2d 1135 (3d Cir. 1990), the Third Circuit dealt with a claim that the personnel of a state mental institution had, *inter alia*, failed to protect a patient from assault. That Court applied the *Youngberg* "professional standards" analysis to the institution's superintendent, assistant superintendent, program coordinator, unit manager, senior resident supervisor, residential services supervisor, and recreation director, among others. *Id.* at 1147. It applied the deliberate indifference standard, however, to residential service aides, nonprofessionals who lacked decision-making authority.

When analyzing conditions of civil commitment, some judges in this District have continued to rely on Eighth Amendment "deliberate indifference" standards, either alone, by analogy, or in combination with other factors.² For

---

² *See Aruanno v. Green*, No. 09-1542 (JLL), 2011 WL 2490988, *8 (D.N.J. June 22, 2011) (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Ford v. Mercer County Corr. Center*, 171 F. App'x 416, 419 (3d Cir. 2006); *Atkinson v. Taylor*, 316 F.3d 257, 262 (3d Cir. 2003)); *Aruanno v. Green*, No. 09-1542 (JJL), 2012 WL 3779390, *5

11

purposes of this motion, however, it is not necessary to precisely limn the contours and limits of the *Youngberg* analysis. Indeed, the precise legal test that applies may itself depend on further development of the record.

As it happens, this Complaint does not rest solely on the *Youngberg* standard; it does allege "deliberate indifference." Compl. ¶¶ 6.4 – 6.5. At this early stage, the allegations are sufficient under either standard.[3] The Defendants, no mere bystanders, were the Administrator of the STU (Yatauro) and the Commissioner of the NJDOC (Lanigan); as such, they were allegedly responsible for conditions in the facility. The Complaint alleges that both Yatauro and Lanigan personally toured the facility, saw the conditions "with their own eyes" and were informed about the complaints, but did nothing. *Id.* ¶ 4.12. Allegedly, then, they were subjectively aware that the STU residents were "exposed to unreasonable risks of injury to their health and well-being." *Id.* ¶ 6.5 By failing to take reasonable measures to correct those unhealthy conditions, Grohs alleges, Yatauro and Lanigan were "deliberately indifferent" to his safety and well-being. *Id.* ¶¶ 6.4 – 6.5. The complaint will bear the interpretation that those defects were ignored for a period of years. That circumstance, too, would support an allegation that Defendants' acts, and their

---

(D.N.J. Aug. 29 2012), *aff'd*, 2013 WL 2350169 (dismissing amended complaint in same action); *see also Cherry Whitehead*, No. 09-4161 (SDW), 2012 WL 253138, *6-7 (D.N.J. Jan. 25, 2012) (applying both standards); *Stahl v. Main*, No. 07-4123 (SRC), 2008 WL 2446816, *3–4 (D.N.J. 2008) (applying deliberate indifference). *But see Wood v. Main*, No. 05-1448 (RMB), 2008 WL 3833584, *3 (D.N.J. Aug. 13, 2008) (applying professional judgment standard in failure-to-protect case brought by institutionalized plaintiff).

[3] I do not here repeat the allegations about conditions in the facility, but focus on the facts relating to the Defendants. In brief, however, the Complaint alleges that the STU receives inadequate hot water for showering, that the water rarely exceeds 73 degrees and is often colder, and that the water temperature fluctuates to cold and/or freezing temperatures. Compl. ¶ 4.4 Grohs also alleges that the shower area is unheated, that pipes in the area are not insulated and leak onto the floor, that the hot water is inadequate for the number of residents, and that residents are not permitted to shower when the water is sufficiently hot between 9:45 pm and 6:15 am. *Id.* ¶ 4.5. As to Grohs personally, the impact of these conditions is magnified by MRSA and a respiratory problem. *Id.* ¶ 4.15.

inaction, constituted deliberate indifference, fell short of professional standards, or both. Either way, dismissal of the Complaint would not be appropriate.

Whether under an Eighth Amendment "deliberate indifference" test, a due process "professional standards" test, or some more specifically tailored analysis, these factual allegations are sufficient to withstand a motion to dismiss. Whether they can be proven is, of course, a separate matter.

The question remains whether denial of hot water is the sort of deprivation that will give rise to a constitutional claim. To some extent, that issue is settled by the *Youngberg* "professional standards" analysis. If a professional prison administrator would attend to such matters, and the failure to do so is a substantial deviation from that standard, then a constitutional issue is posed. Where the commitment is explicitly non-punitive, the denial of adequate hot water would have to be found to bear a "reasonable relation" to the nonpunitive purposes of commitment. *See Seling v. Young*, 531 U.S. at 265. More generally, even in the Eighth Amendment context, and *a fortiori* in the civil context, the state has an affirmative duty to provide adequate food, shelter, clothing, medical care, and safety measures to those in its care. *See Youngberg*, 457 U.S. at 324.

There is some surface plausibility to the notion that denial of adequate hot water bears no relation to the legitimate purposes of confining the residents at Avenel. The New Jersey Sexually Violent Predator's Act, under which the residents are detained, has two fundamental purposes: to protect the public from dangerous predators and to treat sex offenders who are, by definition, suffering from a mental abnormality. *In re Civil Commitment of W.X.C.*, 204 N.J. 179, 188, 8 A. 3d. 174, 179 (2010), *cert. denied*, 131 S .Ct. 1702, 179 L.Ed.2d 635.

There is also some authority for considering adequate hot water as a reasonable condition of confinement. That is particularly true when inadequate

13

hot water is combined with other factors affecting health and safety. As I have said, Eighth Amendment criminal cases must be applied with care in this context, but they do offer some guidance. In a prisoner case, non-functioning water heaters for inmate showers were found to be one of various conditions at the prison that failed to meet constitutional standards. *Carty v. Farrelly*, 957 F. Supp. 727, 736 (D.V.I. 1997); *see also Monmouth Cnty Corr. Inst. Inmates v. Lanzaro*, 595 F. Supp. 1417, 1432 (D.N.J. 1984) (finding inadequate hot water as one of numerous factors contributing to unconstitutional conditions of confinement for both inmates and pre-trial detainees). In that Eighth Amendment context, though, inadequate hot water has played a highly fact-dependent role as one of a number of factors. "Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth or exercise-for example, a low cell temperature at night combined with a failure to issue blankets." *Blackiston v. Vaughn*, No. A. 95-3740, 1998 WL 665477, at *6 (E.D. Pa. Sept. 24, 1998) (non-precedential) (motion to dismiss denied where prisoner alleged there was no heat or hot water, that he was denied a hat and gloves, and that he suffered from the cold as a consequence). And other Eighth Amendment cases have denied claims based on inadequate hot water because that condition was not combined with additional, significant conditions. *See Allen v. Passaic Cnty. Jail*, No. 09-0408, 2009 WL 4591206, at *10 (E.D. Pa. 2009) (citing *Blackinston*) (not precedential); *Watkins v. Johnson*, 375 F. Supp. 1005, 1011 (E.D. Pa. 1974) (conditions of segregated confinement, including a cell with no hot water, did not violate the Eighth Amendment).

As to civil commitment itself, there is little or no case law on claims of inadequate hot water, whether alone or in combination with medical factors. An example of an analogous claim is *Cruz v. Main*, No. 10-5605, 2011 WL 3625068, at *1 (D.N.J. Aug. 15, 2011). There, Judge Wigenton of this Court

addressed a claim (one among many) by a person at the Avenel STU that the air circulation was limited, the roof leaked, and that the water quality was poor. Judge Wigenton allowed that these defects, if not addressed by renovations, might give rise to a claim, but applied a totality-of-the-circumstances analysis and denied all conditions-of-confinement claims "without prejudice, for failure to state a claim at this time." *Id.* at *5.

I find that the principles of the above-cited cases strongly suggest that the allegations, if proven, could make out a plausible constitutional claim. The motion to dismiss the complaint is therefore denied.

### C. Qualified Immunity

The Defendants also claim that dismissal is appropriate because they enjoy qualified immunity from the Section 1983 claims. Def. Br. (Docket No. 21-1) at 16.

#### 1. The qualified immunity analysis

Qualified immunity protects government officials such as Defendants Yataouro and Lanigan from liability for damages as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808 (2009) (quoting *Harlow*, 457 U.S. at 818). It does not matter whether the error relates to the law, the facts, or some mixture of the two. *Id.* (citing *Groh v. Ramirez*, 540 U.S. 551, 567, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (Kennedy, dissenting); *Butz v. Economou*, 438 U.S. 478, 507, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), (qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law")). As long as an official reasonably believes that his or her conduct complies with the law, qualified immunity will shield the official from liability. *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012).

Immunity does not extend to all officers who engage in necessary official acts. *See Hafer*, 502 U.S. at 29. Rather, officers' individual immunity from suit under Section 1983 is predicated on "a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it." *Id.* (quoting *Imbler v. Pachtman*, 424 U.S. 409, 421, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). "Officials who seek exemption from personal liability have the burden of showing that such an exemption is justified by overriding considerations of public policy, and the Court has recognized a category of 'qualified' immunity that avoids unnecessarily extending the scope of the traditional concept of absolute immunity." *Forrester v. White*, 484 U.S. 219, 224, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988); *see also Scheuer v. Rhodes*, 416 U.S. 232 (1974); *Butz v. Economou*, 438 U.S. 478 (1978); *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

Courts regularly employ a two-step test, originally adopted in *Saucier v. Katz*: (1) whether the official's conduct violated a constitutional or federal right; and (2) whether the right at issue was "clearly established." 533 U.S. 194, 201 (2001). *Pearson* later overruled the requirement of *Saucier* that the two prongs be analyzed in the prescribed order. 555 U.S. at 244; *see also Sharp*, 669 F.3d at 159.

Whether conduct violates a constitutional right is straightforward, at least conceptually. It is a matter of applying case law to the facts alleged. The substantive content of the constitutional claims was discussed above.

Whether such a constitutional violation is "clearly established" requires more explanation. The Third Circuit has found that "a right is clearly established for qualified immunity purposes where its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Sharp*, 669 F.3d at 159 (quoting *Saucier*, 533 U.S. at 202); *see also Williams v. Bitner*, 455 F.3d 186, 191 (3d Cir. 2006). That is to say, the right the official is alleged to have violated must have been "clearly established" in a

particularized way and the court must define the right with the appropriate level of specificity. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034 (1987); *Wilson v. Layne*, 526 U.S. 603, 615, 119 S.Ct. 1692 (1999); *Williams v. Bitner*, 455 F.3d 186, 191 (3d Cir. 2006); *Sharp*, 669 F.3d at 159. Even if there is no precedent directly on point, however, an action may still violate a clearly established right where a general constitutional rule already identified in the decisional law applies with "obvious clarity" to the specific conduct in question. *Id.*; *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508 (2002); *Anderson*, 483 U.S. at 641.

### 2. Whether the Complaint alleges a constitutional violation that is clearly established for purposes of qualified immunity

Grohs' claim that inadequate hot water at the STU impaired the safety and well-being of its residents implicates his constitutional right to reasonable conditions of confinement, as established above. The question remains whether existing law on reasonable conditions of health and safety applies to Groh's claim with the requisite "obvious clarity." *Hope v. Pelzer*, 536 U.S. at 741; *Anderson*, 483 U.S. at 640; *Sharp*, 669 F.3d at 159. To be sure, it is desirable to resolve the question of qualified immunity as early as possible, ideally at the motion to dismiss stage. Because qualified immunity is an immunity from suit, and not just a defense to liability, it is effectively lost if a case erroneously proceeds to trial. *Pearson*, 555 U.S. at 231 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985)). I find, however, that I cannot dismiss the complaint on qualified immunity grounds at this early stage.

The adequacy, or not, of hot water has not given rise to a specialized jurisprudence with respect to civilly committed persons. It is clear, however, that such persons, who are not being punished criminally but have involuntarily been placed under Defendants' care and supervision, have a right to humane conditions and some reasonable level of concern for their health and safety.

Particularly under the due process standard, the law is clear enough that I cannot now grant a motion to dismiss or find qualified immunity. Under *Youngberg, supra,* and *Shaw, supra,* a developed factual record might well establish a substantial divergence from the professional standards that apply to Defendants' positions. Certainly a complete failure to take steps to prevent a plaintiff with a medical condition from being daily doused with cold water would plausibly give rise to such a claim. In the present posture, I will not dismiss a claim that, by allegedly failing to repair the water system, Yatauro and Lanigan substantially departed from acceptable professional judgment, in violation of Grohs' Fourteenth Amendment due process rights. *See Shaw,* 920 F.2d at 1143, 1145.[4]

The motion to dismiss on qualified immunity grounds is denied.

### D. Preliminary Injunction Related to Alleged Retaliation

Grohs has also filed a motion for a preliminary injunction against various corrections officers "in the control of Defendant Lanigan" for alleged retaliation related to the filing of this action. P.I. Motion, (Docket No. 24 at 1). The motion seems to be based on a retaliation claim that has not been pleaded.

---

[4] I note that there have been (unreported) cases in this district finding no cognizable conditions of confinement claim because the STU plaintiff failed to allege that the treatment constituted "punishment" or that he was adversely affected. *See e.g. Anderson v. DaCosta,* No. 10-5835 (FSH), 2011 WL 2223713, at *15 (D.N.J. June 1, 1011); *Vanderpool v. Sharp,* No. 10-5082 (WJM), 2011 WL 941343, at *7 (D.N.J. Mar. 15, 2011); *Graham v. Main,* No. 10-5027 (SRC), 2011 WL 2412998, at *10 (D.N.J. June 9, 2011); *Cooper v. Sharp,* No. 10-5245 (FSH), 2011 WL 1045234, at *11 (D.N.J. Mar. 23, 2011); *Badu-Shabazz v. Sharp,* No. 10-5637 (WJM), 2011 WL 1080521, at *11 (D.N.J. March 21, 2011); *Barber v. Sharp,* No. 10-5286 (PGS), 2011 WL 2223651 at *7 (D.N.J. June 2, 2011). Grohs' complaint, however, does allege with specificity that he was adversely affected by the Defendants' failure to provide reasonable conditions in the STU. And the factual record, if developed, may well establish that the *Youngberg/Shaw* analysis is most appropriate to this situation.

In his motion, Grohs requests that the Court enter an order directing STU officers Lt. M. Rock-Asencio, Sgt. Fratalone, and SCO Datz to "cease all retaliation" against him, restrict their contact with him to areas of the STU under video surveillance, allow Grohs to confer with his attorney at any time prior to his being questioned, and for the Court to exercise supplemental jurisdiction over his (hypothetical) state-law retaliation claim. Plaintiff P.I. Br., (Docket No. 24-1), at 10–11. Rock-Asencio, Fratalone, and Datz are not parties to this action.

Grohs has not shown he is entitled to the relief he requests in his motion. A preliminary injunction is "an extraordinary remedy" that should be granted only in limited circumstances. *Am. Tel. and Tel. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1426–27 (3d Cir. 1994). In ruling on a motion for a preliminary injunction, the court must consider: (1) the likelihood that the plaintiff will prevail on the merits at a final hearing; (2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which the defendant will suffer irreparable harm if the preliminary injunction is issued; and (4) the public interest. *Id.* (citing *Opticians Ass'n v. Indep. Opticians*, 920 F.2d 187, 191–92 (3d Cir.1990)). The Court should issue the injunction only if the plaintiff has produced evidence sufficient to convince the court that all four factors favor the relief.

Here, Grohs is not seeking relief based on claims pleaded in the Complaint. Rather, he is attempting to obtain preliminary relief based on an unpleaded retaliation claim that "may" exist. *See* P.I. Plaintiff Br. at 6 ("Plaintiff may be able to support a claim for retaliation.")

Grohs alleges that the retaliation began in May 2013, over a year after the Complaint in this case was filed. *Id.* at 3. Only one concrete act of retaliation is alleged: Corrections officers at the STU, who are not parties to this action, allegedly confiscated Grohs' legal documents and searched him for "no reason." *Id.* at 3–4. Grohs does not make any credible factual allegation

that the named Defendants knew of these actions. Grohs only alleges that he submitted written requests and remedy forms to "facility officials." *Id.*; P.I. Plaintiff Supp. Br. (Docket No. 27), at 4. Further, Grohs acknowledges that the allegedly confiscated papers were returned to him. *Id.* at 5.

In short, neither likelihood of success nor any irreparable, ongoing harm is present. And the absence of either would be sufficient to defeat an application for a preliminary injunction. *See American Express Travel Related Servs., Inc. v. Sidamon-Eristoff,* 669 F.3d 359, 366 (3d Cir. 2012); *Adams v. Freedom Forge,* 204 F.3d 475, 484 (3d Cir. 2000). Indeed, even if these allegations were taken as true, and even if they related to an existing claim against an existing party, they probably would not support an application for extraordinary injunctive relief.

A motion for preliminary relief is not an appropriate means of asserting new claims. The motion for a preliminary injunction is in any event denied.

### III. CONCLUSION

For the foregoing reasons, the motion to dismiss the Complaint against Defendants Yatauro and Lanigan (Docket No. 21) is:

1. **GRANTED** as to claims for damages against the Defendants in their official capacities;
2. **DENIED** as to claims for damages against the Defendants in their individual capacities; and
3. **DENIED** as to claims for prospective equitable relief.

In addition, the motion for a preliminary injunction (Docket No. 24) is **DENIED**. An Order will be entered in accordance with this Opinion.

Dated: November 20, 2013

KEVIN MCNULTY, U.S.D.J.